IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BRICE BUILDING COMPANY, INC.,
      Plaintiff,

v.                                  Case No.  3:07cv196/EMT

CLARENDON AMERICAN INSURANCE
COMPANY, INC.,
      Defendant.
_____/

## ORDER

Now before the court are Plaintiff's Motion for Partial Summary Judgment and supporting documentation (Docs. 75, 76, 92) and Defendant's Motion for Final Summary Judgment and supporting documentation (Docs. 77, 78, 94).  The parties have also filed responses in opposition to the summary judgment motions (Doc. 91 (Plaintiff's response); Doc. 93 (Defendant's response)).  As explained below, Plaintiff's motion is granted and Defendant's is denied.

I.      BACKGROUND

The material facts in this diversity jurisdiction case are without substantial controversy and may be summarized as follows.  Plaintiff Brice Building Company, Inc. (Brice) is an Alabama corporation and was the general contractor for a construction project known as the Preserve Place at Grayton Beach, Florida (Preserve Place).  On or about September 7, 2004, Brice entered into a subcontract with B & C Fire Safety, Inc. (B & C), whereby B & C was to install a sprinkler system at Preserve Place.  The subcontract contains a rider which, in pertinent part, contains the following provision:

> (a) Subcontractor's Insurance: The subcontractor [B & C] will maintain such insurance as will insure . . . it, the Contractor [Brice], and the Owner [Preserve Place] from any other claims for property damage and claims for personal injury, including death, which may arise from operations under this Subcontract, whether such

operations be by itself or any of its subcontractors or anyone directly or indirectly employed by either of them. . . .

(Doc. 37, Ex. A). Additionally, the subcontract required that B & C name Brice and the Owner as additional insureds under the policy (*id*.).

B & C had previously obtained an insurance policy (the policy), which was issued by Defendant Clarendon America Insurance Company, Inc. (Clarendon).[1] The policy was in effect from May 2, 2004 through May 2, 2005 (*see id.*, Ex. B). As contemplated by the terms of the subcontract between B & C and Brice, Brice appears to have been added as an additional insured under the policy issued by Clarendon.[2] Relevant to the instant summary judgment motions, the policy contained the following general liability coverage provisions:

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement
    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages . . ."
    b. This insurance applies to 'bodily injury' and 'property damage' only if:
        (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and
        (2) The 'bodily injury' or 'property damage' occurs during the policy period.
    c. Damages because of 'bodily injury' include damages claimed by any person . . . for death resulting at any time from the 'bodily injury,'

(Doc. 37, Ex. B).

Further, with respect to parties to whom indemnity is owed, the policy provides:

---

[1] Although Plaintiff has named Clarendon American Insurance Company, Inc., d/b/a/ First Mercury Insurance Company, as the lone Defendant, Defendant states that its correct legal name is Clarendon America Insurance Company, and further, that it does not do business as First Mercury Insurance Company (Doc. 94 at 1).

[2] On or about November 15, 2004, a "Certificate of Liability Insurance" was issued, stating that Brice was named as an additional insured under the policy, as was the owner (Preserve Place), regarding the "Preserve Place at Grayton Beach" (*see* Doc. 37, Ex. C). The certificate specifically indicates that the policy to which Brice is added as an additional insured, is policy number HX00009392, the general liability policy issued by Clarendon to B & C that is at issue in this case (*see, e.g.*, Doc. 77, Ex. B (the Clarendon Policy, number HX00009392, issued to B & C)).

If we defend the insured against a 'suit' and an indemnitee of the insured is also named as a party to the 'suit,' we will defend the indemnitee if all of the following conditions are met:

a.      The 'suit' against the indemnitee seeks damages for which the insured has assumed liability of the indemnitee in a contract or agreement that is an 'insured contract';

b.      This insurance applies to such liability assumed by the insured;

c.      The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same 'insured contract';

d.      The allegations in the 'suit' and the information we know about the 'occurrence' are such that no conflict appears to exist between the interest of the insured and the interest of the indemnitee;

e.      The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such 'suit' and agree that we can assign the same counsel to defend the insured and the indemnitee . . .

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments.  Notwithstanding the provisions of paragraph 2.b(2) of COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I — Coverages), such payments will not be deemed to be damages for 'bodily injury' and 'property damages' and will not reduce the limits of insurance . . . .

(*id.*).

The policy also contains certain exclusions, including the following (titled "Contractual Liability," an exclusion found in Section I(A) of the policy):

'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

(1)      That the insured would have in the absence of the contract or agreement; or

(2)      Assumed in a contract or agreement that is an 'insured contract,' provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement . . .

(*id.*).

Additionally, the policy includes the following "Blanket Additional Insured Endorsement":

This endorsement modifies insurance provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE PART.

WHO IS AN INSURED (Section II) provision of the Policy is amended to include as an insured any person or organization (called 'additional insured') to whom you are obligated by valid written contract to provide such coverage, but only with respect to liability for 'bodily injury' or 'property damage' <u>arising solely out of 'your work'</u> on behalf of said additional insured for which coverage is provided by this policy.

This insurance does not apply to 'bodily injury' or 'property damage' arising out of the assumption of liability in a contact or agreement.  This exclusion does not apply to liability for damages that the additional insured(s) would have in the absence of the contract or agreement.

It is the intent of this endorsement to exclude all claims, demands or suits arising out of any 'bodily injury' or 'property damage' to which this insurance does not apply.  There shall, therefore, be no duty or obligation on our part under this insurance to defend, respond to, investigate, or indemnify anyone for any such claim, demand or suit.

Nothing herein contained shall be held to waive, vary, alter or extend any of the terms, limitations and conditions of the policy other than as above stated.

(*id.*) (emphasis added).

Finally, an endorsement to the policy, titled "EXCLUSION - INDEPENDENT CONTRACTORS," states as follows:

This endorsement modifies insurance provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE PART.

This insurance does not apply to any 'claim' arising out of operations performed for you by independent contractors or your acts or omissions in connection with your general supervision of such operations.

It is the intent of this endorsement to exclude from this insurance all claims, demands, or suits as above described.  There shall, therefore, be no duty or obligation on our part under this insurance to defend, respond to, investigate, or indemnify anyone, including but not limited to you, your agents, servants, or employees, or any third parties for any such claim, demand or suit.

(*id.*).

Case No.  3:07cv196/EMT

On December 16, 2004, and at the behest of B & C, a delivery truck owned by Guntersville Fabrication and Sprinkler Company, Inc. (Guntersville) was delivering supplies to the Preserve Place construction site.  Ricky L. Waters was the driver of the delivery truck (*see, e.g.*, Doc. 77, Ex. F).  Mr. Waters parked the delivery truck in the roadway of Walton County Road 30-A where materials were offloaded from the truck (*id.*).[3]  Near the end of the offloading process, Joseph R. Eddy was killed when the vehicle he was driving rear-ended the Guntersville delivery truck.

On December 17, 2004, Brice requested that Clarendon defend and indemnify it, as an additional insured under the policy, "for all claims arising from the traffic accident" (Doc. 75, Ex. E).  On January 20, 2005, First Mercury Insurance Company (First Mercury), who was "handling" Brice's request on behalf of Clarendon, denied Brice's claim for coverage under the policy (*id.*, Ex. H).  In denying coverage, First Mercury relied on policy terms contained in the Blanket Additional Insured Endorsement which provide, as detailed *supra*, that Brice is insured "only with respect to liability for 'bodily injury' or 'property damage' arising solely out of 'your work' . . ." (*id.*).  Specifically, First Mercury, on behalf of Clarendon, contended that the loss did not arise <u>solely out</u> of B & C's work, noting that the delivery truck was not owned by B & C and asserting that a Brice employee instructed Mr. Waters to park on the highway, which was a contributing cause of the accident (*id.*).  Brice made subsequent requests for defense and indemnity, which were similarly denied (*see* Doc. 75, Exs. I–K).  For example, in December 2005, Brice again sought defense and indemnity from "B & C's insurer [i.e., Clarendon]" and additionally sought confirmation that Brice was added as an additional insured under the policy as contemplated by the terms of the subcontract between Brice and B & C (*id.*, Ex. I).  In response, First Mercury (again on behalf of Clarendon) stated that Brice's request for coverage was denied pursuant to the terms of the Blanket Additional Insured Endorsement (*id.*, Ex. J).  Moreover, First Mercury's litigation specialist, on Clarendon's behalf, specifically advised Brice that pursuant to the terms of the policy, "<u>additional insured coverage is provided</u> [to Brice]," but he further stated that defense and indemnification would not be provided because the loss did not arise solely out of B & C's work (*id.*) (emphasis added).

---

[3]The parties dispute why the delivery truck was parked in the roadway, as opposed to being parked on the construction site (or a nearby construction site).

Next, Jacqueline M. Parks, as personal representative of Mr. Eddy's estate, filed a wrongful death lawsuit in the Circuit Court in and for Walton County Florida. Named as Defendants in the complaint were: Ricky L. Waters, the driver of Guntersville's truck, Guntersville, Brice, and B & C. The wrongful death action proceeded to trial, and on June 30, 2007, a jury found that each Defendant was negligent and that the negligence was a legal cause of Mr. Eddy's death. The jury was asked to determine "the percentage of any negligence which was a legal cause of [Mr. Eddy's] death" (*see* Doc. 75, Ex. L). In response, the jury apportioned negligence as follows: Ricky L. Waters and Guntersville (20%), Brice (40%), B & C (20%), and Mr. Eddy (20%) (*id.*).

On May 11, 2007, Brice filed the instant lawsuit (*see* Doc. 1). In Count I, Brice seeks declaratory relief regarding its rights as an additional insured under the policy, including a declaration that Brice is indeed an additional insured, that Clarendon is required to provide indemnity, that Clarendon is/was obligated to Defendant Brice in the Walton County lawsuit, that Brice has complied with the terms and conditions of the policy, and Brice seeks a judgment against Clarendon resulting from a breach of contract, including attorneys' fees, costs of defense, and interest (*see* Doc. 37 (amended complaint)). In Count II, Brice alleges breach of contract and seeks the same declaratory relief as in Count I, but additionally seeks a declaration that Clarendon breached its duty to defend and indemnify Brice (*id.*).

The instant motions for partial and final summary judgment essentially call upon the undersigned to interpret the policy (and endorsements or exclusions thereto) to determine the parties' rights and obligations. In brief, Brice contends it is indeed an additional insured under the policy and is therefore entitled to defense and indemnity with respect to the Walton County lawsuit, while Clarendon asserts that Mr. Eddy's traffic accident did not arise "solely" out of B & C's work, or alternatively, that Guntersville was an "independent contractor," and therefore, the independent contractor exclusion is applicable.

## II.     SUMMARY JUDGMENT STANDARD and APPLICABLE LAW

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548,

2552, 91 L. Ed. 2d 265 (1986). A factual dispute is "'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." Anderson, 477 U.S. at 248; Tipton v. Bergrohr GMBH-Siegen, 965 F. 2d 994, 998 (11th Cir. 1992). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citation omitted). Nevertheless, a general denial unaccompanied by any evidentiary support will not suffice. See, e.g., Courson v. McMillian, 939 F.2d 1479 (11th Cir. 1991); Hutton v. Strickland, 919 F.2d 1531 (11th Cir. 1991). Furthermore, the court is not obliged to deny summary judgment for the moving party when the evidence favoring the nonmoving party is merely colorable or is not significantly probative. See Anderson, 477 U.S. at 249. Indeed, the existence of a scintilla of evidence in support of the nonmovant's position is insufficient; the test is "whether there is [evidence] upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 252. The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). Once the movant satisfies its burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., 475 U.S. at 587 (emphasis omitted).

In diversity actions such as the instant case, federal courts apply the law of the forum state. See Erie RR. Co. v. Tompkins, 304 U.S. 64 (1938); Keller v. Miami Herald Publ. Co., 778 F. 2d 711 (11th Cir. 1985), and in Florida, the interpretation of an insurance contract is an issue to be decided as a matter of law. See, e.g., Siegle v. Progressive Consumers Ins. Co., 788 So. 2d 355, 357 (Fla. 4th DCA 2001), approved, 819 So. 2d 732 (Fla. 2002) (construction of an insurance contract and the determination of whether Florida law requires the insurer to provide coverage are questions of

law).

The Florida Supreme Court has stated, that "Under Florida law, insurance contracts are construed according to their plain meaning. Ambiguities are construed against the insurer and in favor of coverage." Taurus Holdings, Inc. v. United States Fidelity & Guaranty Co., 913 So. 2d 528, 532 (Fla. 2005). When an insurance contract is not ambiguous, however, it must be given effect as written. *See, e.g.,* State Farm Fire & Cas. Co. v. Oliveras, 441 So.2d 175, 178 (Fla. 4th DCA 1983).

Similarly, the Florida Supreme Court has noted:

> [W]e must follow the guiding principle that this Court has consistently applied that insurance contracts must be construed in accordance with the plain language of the policy. *See* Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000); Prudential Property & Casualty Ins. Co. v. Swindal, 622 So. 2d 467, 470 (Fla. 1993). Further, we consider that "[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous." Auto-Owners, 756 So. 2d at 34. An ambiguous provision is construed in favor of the insured and strictly against the drafter. *See id.*

Swire Pacific Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2003). Moreover, in State Farm Mutual Automobile Insurance Co. v. Pridgen, 498 So. 2d 1245 (Fla. 1986), the court announced the rule to be followed in the interpretation of exclusionary clauses in insurance policies:

> [E]xclusionary provisions which are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured, since it is the insurer who usually drafts the policy. *See* Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So. 2d 938, 942 (Fla. 1979). However, "[o]nly when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule apposite. It does not allow courts to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Id.*

Pridgen, 498 So. 2d at 1248. Furthermore, although a provision may be complex and require analysis for application, it is not automatically rendered ambiguous, *see* Eagle American Ins. Co. v. Nichols, 814 So. 2d 1083, 1085 (Fla. 4th DCA 2002), and "[t]he lack of a definition of an operative term in a policy does not necessarily render the term ambiguous and in need of interpretation by the courts." State Farm Fire & Casualty Co. v. CTC Devlp't Corp., 720 So. 2d 1072, 1076 (Fla. 1998). Finally, the Florida Supreme Court has consistently held that "in

construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *See, e.g.*, Auto-Owners, 756 So. 2d at 34; *see also* § 627.419(1), Fla. Stat. (2002) ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto.").

III.    DISCUSSION

Primarily at issue in this case is whether Clarendon was required to defend and indemnify Brice with regard to the Walton County lawsuit and resulting judgment. Clarendon makes two basic arguments in support of its position that it did not owe Brice defense and indemnity. First, Clarendon asserts that the terms of the Blanket Additional Insured Endorsement require defense and indemnity only if Mr. Eddy's death arose solely out of B & C's work on behalf of Brice. Because the Walton County jury determined that other defendants, in addition to B & C, were responsible for Mr. Eddy's death, Clarendon argues that Brice's liability for the death did not arise "solely out of" B & C's work, and thus, defense and indemnity were not owed (Doc. 77 at 5–11). Second, Clarendon asserts that Guntersville was an independent contractor, and by the terms of the Independent Contractor Exclusion, defense and indemnity were not owed to Brice (*id.* at 12–13).

A.    Blanket Additional Insured Endorsement (BAIE)

The parties' motions, in part, turn on this court's interpretation of the BAIE, and in particular, the emphasized language below:

> WHO IS AN INSURED (Section II) provision of the Policy is amended to include as an insured any person or organization (called 'additional insured') to whom you are obligated by valid written contract to provide such coverage, but only with respect to liability for 'bodily injury' or 'property damage' arising solely out of 'your work' on behalf of said additional insured for which coverage is provided by this policy.

(Doc. 37, Ex. A).

Thus, the BAIE requires three elements to be met in order for Brice to be an additional insured under the policy: (1) B&C must be obligated by a valid written contract to provide coverage, (2) with respect to liability for "bodily injury" or "property damage," (3) arising "solely out of" B&C's work.

1.      Valid Written Contract

The relevant facts regarding whether a "valid written contract" exists are as follows. First, as detailed *supra*, in September 2004, Brice and B & C entered into a written subcontract that required B & C to maintain insurance that would insure it and Brice from personal injury or death claims that arise from operations (i.e., B & C's installation of the sprinkler system at Preserve Place) under the subcontract (Doc. 37, Ex. A). Additionally, pursuant to the terms of the subcontract, Brice was to be added as an additional insured under B & C's policy (*id.*). Furthermore, a certificate of liability insurance, issued November 15, 2004, states that Brice is an additional insured under the policy issued by Clarendon to B & C (*id.*, Ex. C).

Next, First Mercury, on behalf of Clarendon, acknowledged that Brice was an additional insured under the policy, but denied coverage (on Clarendon's behalf) on the ground that Mr. Eddy's death did not arise "solely" out of B & C's work (*see* Doc. 75, Exs. H, J (letters from First Mercury); *see also* Doc. 75, Ex. G (deposition testimony of First Mercury's claims manager that in his opinion this first requirement was met; that is, that a valid written contract existed (*see* transcript pp. 40–43, 51–52, 72–73; *but see* p. 75 (acknowledgment by claims manager that he is not an attorney))). Moreover, in Defendant's motion for final summary judgment, Defendant has specifically stated that "there are no genuine issues of material fact," and "the only question before this Honorable Court is a question of law" regarding the interpretation of the BAIE and the Independent Contractor Exclusion (*see* Doc. 77 and Doc. 77 at 2). Although this court's interpretation of the BAIE necessarily includes an analysis of whether the requirement of a "valid written contract" has been met, Defendant makes only three specific arguments in its motion for summary judgment, none of which dispute the existence of a valid written contract. Clarendon contends, in the following sequence, that: 1) Brice's liability did not arise solely out of B & C's work (*id.* at 5–11), 2) Guntersville is an independent contractor and thus coverage is excluded (*id.* at 12–13), and 3) the allegations in the Walton County complaint and the jury's findings regarding liability establish that Clarendon had no duty to indemnify Brice (in other words, Clarendon asserts that Brice's liability did not arise "solely out of" B & C's work, and therefore, coverage was not owed) (*see id.* at 13–16). Indeed, Defendant has specifically stated in its motion for final summary judgment that its "policy does not insure Brice for their negligence but only for the liability that arises solely out of B & C's

work" (*id.* at 15). Thus, it would appear that Plaintiff has established the existence of a valid written contract, and further, that Defendant has conceded that this first requirement of the BAIE has been established.

Defendant, however, has suggested in its response in opposition to Plaintiff's motion for partial summary judgment, that Plaintiff failed to establish that B & C was obligated by a valid written contract to provide coverage to Brice (*see* Doc. 93 at 2). To the extent Defendant has properly raised this argument, the court cannot agree and finds that a valid contract exists (*see* Doc. 37, Exs. A, C (subcontract between Brice and B & C and certificate of liability insurance); Doc. 75, Exs. G, H, J (deposition testimony of, and letters from, First Mercury's claims manager); Doc. 77 and Doc. 77 at 15 (Defendant's motion for final summary judgment and acknowledgment therein)). Thus, the court concludes that B & C was obligated by a valid written contract to provide coverage to Brice.

### 2. Bodily Injury

The parties do not dispute, and the court finds, that Mr. Eddy's death constitutes "bodily injury," as contemplated by the terms of the BAIE (*see* Doc. 75 at 11–12; Doc. 93 at 2).

### 3. Solely Out of B & C's Work

Clarendon's argument is somewhat confusing in this regard. At first glance, Clarendon appears to assert that Mr. Eddy's death did not arise "solely out of" B & C's <u>work</u>, and therefore, the BAIE does not provide coverage. However, Clarendon additionally appears to assert that Brice must establish that its "'<u>liability</u> for [Eddy's death] arose *to the exclusion of all else* other than B & C's work'" in order to be covered under the policy (Doc. 77 at 6) (emphasis in original). However, whether the argument concerns B & C's "work," or Brice's "liability," the argument fails.

To the extent Clarendon claims defense and indemnity are owed under the policy only if Brice is "solely" liable for damages, the court cannot agree. The BAIE plainly states that it amends the policy to include Brice, as an additional insured under the policy, with respect to liability for bodily injury arising solely out of B & C's work on behalf of Brice. This language is not ambiguous, and giving the words their commonly accepted meanings, it is clear that the word "solely" refers to B & C's <u>work</u>, not Brice's (or any other party's) <u>liability</u>; therefore, it matters not that neither Brice, nor any other person or entity, was found "solely" liable for Mr. Eddy's death.

To the extent Clarendon asserts that Mr. Eddy's death did not arise "solely out of" B & C's work, again, the court cannot agree. Mr. Eddy's death occurred when the vehicle he was driving rear-ended a Guntersville delivery truck that was delivering supplies to B & C at the construction site. Stated another way, the delivery by Guntersville was "solely" related to, and was "solely" a part of, B & C's work — the "sole" reason the delivery truck was there was to further B & C's work.[4]

Although the undersigned has found no Florida case directly on point, a California court was called upon to interpret the same provision in an insurance policy. *See* Anheuser Busch, Inc. v. Empire Indem. Ins. Co., No. LC053735, 2003 WL 21186297, at *1 (Cal. App. 2 Dist., May 21, 2003). The relevant facts in the California case reveal that Anheuser Busch (AB) and HMI, a security company, entered into a contract whereby HMI agreed to provide security services for AB's brewery. *Id.* Under the terms of the contract, HMI was required to furnish and maintain liability insurance for personal injury, and it was required to include AB as an additional insured. *Id.* HMI obtained a commercial liability policy from Empire Indemnity Insurance Company (Empire), and that policy contained a blanket additional insured endorsement that is identical to the BAIE in the instant case. *Id.* While on duty as a security guard at AB's brewery, an HMI employee slipped and fell, alleging that his injuries were caused by AB's negligence in maintaining the brewery premises. *Id.* AB tendered the slip and fall action to Empire for defense and indemnity, and Empire denied coverage and refused to defend AB. *Id.* In finding that Empire wrongfully denied coverage, the court noted that the blanket additional insured endorsement provides:

> that AB is an additional insured with respect to liability for bodily injury "arising solely out of" HMI's work on behalf of AB. The word "solely" in this endorsement emphasizes that AB is an additional insured only with respect to claims which are connected to HMI's work for AB. It does not require that the claim itself arise from HMI's negligence or other fault. The causal connection required by the endorsement is to HMI's work for AB, not to HMI's fault.

---

[4]Thus, it matters not why the Guntersville delivery truck was parked in the roadway (i.e., whether a Brice employee directed that it be parked there or whether Guntersville or B & C were responsible for parking the delivery truck there) — a matter that remains in dispute to this day — as that issue concerns liability. Regardless of why the truck was parked in the roadway, the fact remains that the delivery truck was at the construction site at the behest of B & C and "solely" for B & C's work.

*Id.*, at *2.

Here, just like in <u>Anheuser Busch</u>, the focus must be on B & C's work, not on anyone's fault,[5] and because Mr. Eddy's death clearly occurred in connection with B & C's work, Clarendon wrongfully denied coverage to Brice and wrongfully failed to defend and indemnify Brice. Although, as Defendant points out, <u>Anheuser Busch</u> is not controlling authority, the court finds its reasoning persuasive.

Additionally, in the instant case, it is important to note that the subcontract between Brice and B & C defines the "work" to be done by B & C, in pertinent part, as "provid[ing] all labor, material, and equipment necessary for all fire sprinkler work" (Doc. 37, Ex. A). Similarly, the Clarendon policy, in pertinent part, defines "your work," as "Work or operations performed by you or on your behalf; and [] Materials, parts or equipment furnished in connection with such work or operations." (Doc. 37, Ex. B). Thus, according to the unambiguous language of both the subcontract and the BAIE, B & C's "work" includes work performed by B & C or work performed by someone on B & C's behalf (i.e., Guntersville), and it includes the providing of materials necessary for B & C's work or furnished in connection with B & C's work, such as the sprinkler equipment provided by Guntersville.

B.  Independent Contractor Exclusion (ICE)

Having concluded that the BAIE required Clarendon to defend and indemnify Brice, the remaining issue is whether the ICE is applicable. The Clarendon policy states that insurance will not apply to claims arising out of operations performed for B & C by independent contractors. Clarendon asserts that Guntersville was an independent contractor, and therefore, the ICE applies.

Initially, the court notes that the Clarendon policy does not define "independent contractor," but this does not necessarily render the term ambiguous. *See* <u>CTC Development Corp.</u>, 720 So. 2d at 1076. Indeed, the intent of the Independent Contractor Exclusion — as it relates to the meaning of the term "independent contractor" — can be clearly determined and understood, and no ambiguity exists. Thus, the contract must be construed in accordance with the plain language of the policy.

---

[5]Indeed, in <u>Anheuser Busch</u>, the allegation was that AB (which is in the same position as Brice in the instant lawsuit), was solely negligent for the injuries sustained by HMI's employee. This, however, was irrelevant to the court's decision.

A commonly accepted definition of an independent contractor is "one who, in the exercise of an independent employment, contracts to do certain work according to his own methods, and without being subject to the control of his employer except as to the product or result of his work. The difference between an independent contractor and a servant is well recognized, the chief distinction being the right of control over the work."). <u>Wilson v. Sandstrom</u>, 317 So. 2d 732 (Fla. 1975) (citing 17 Fla. Jur., Independent Contractors, § 2, p. 174). Here, the facts do not establish that Guntersville contracted to do any work for B & C, much less work according to its own methods. Similarly, the facts do not establish that Guntersville had any control over the installation of the sprinkler system at Preserve Place — Guntersville merely agreed to sell and deliver goods to the construction site at the behest of B & C.

Moreover, Clarendon has offered no evidence to support its claim that Guntersville was an independent contractor. Indeed, the only evidence offered by Clarendon is an invoice from Guntersville to B & C, which is actually detrimental to the argument asserted by Clarendon (Doc. 77, Ex. D). The invoice identifies the basis for Guntersville's charges as follows: "Fabricated sprinkler system shipped to Grayton Beach, FL for <u>your job</u> [at] Preserve Place," and the invoice states that the amounts owed to Guntersville by B & C are for (in pertinent part) material, tax, and freight (*id.*) (emphasis added). The invoice makes it clear that B & C was to perform the work, and Guntersville was simply a seller of goods necessary for the work. *See* Fla. Stat. §§ 672.101, 672.103, and 672.105 (Florida's adoption of the Uniform Commercial Code, defining "seller" as "a person who sells or contracts to sell goods," and "goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid . . ."). Thus, the court finds as a matter of law that Guntersville was not an independent contractor, and the exclusion is therefore inapplicable.

Finally, the court notes that the parties have interpreted the provisions of the BAIE quite differently. Although the court does not find the language of the BAIE ambiguous, to the extent the parties' differing interpretations establish that the terms of the BAIE are ambiguous, as noted *supra*, the ambiguity should be resolved in favor of Brice. For all these reasons, the court shall grant summary judgment in Plaintiff's favor.

Accordingly, it is **ORDERED**:

     1.     Plaintiff's Motion for Partial Summary Judgment (Doc. 75) is **GRANTED**.  As a matter of law, this court hereby concludes that Plaintiff is an additional insured under the policy of insurance issued by Defendant, and Plaintiff is owed indemnity and defense costs by Defendant under the terms and conditions of the policy.

     2.     Defendant's Motion for Final Summary Judgment (Doc. 77) is **DENIED.**

     3.     Within **TWENTY (20) DAYS** of the date of docketing of this order, the parties shall file a joint notice with the court indicating which issues, if any, remain in dispute in light of the undersigned's findings in this order.  If any issues remain in dispute, the parties shall indicate in the notice whether mediation would likely resolve the remaining disputes.  Alternatively, if settlement is likely, the parties shall so indicate in the notice and state the anticipated time for reaching a final settlement.  Any other matters deemed relevant by the parties may be included in the notice.

     **DONE AND ORDERED** this   6th   day of October 2008.


                         */s/ Elizabeth M. Timothy*
                         **ELIZABETH M. TIMOTHY**
                         **UNITED STATES MAGISTRATE JUDGE**