IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BRICE BUILDING COMPANY, INC.,
    Plaintiff,

v.                                         Case No.  3:07cv196/EMT

CLARENDON AMERICAN INSURANCE
COMPANY, INC.,
    Defendant.
_____/

## **ORDER**

       This cause is now before the court on Plaintiff's Motion for Declaratory Judgment and Memorandum of Law in Support of Final Judgment (Doc. 142), Defendant's response in opposition thereto and "Notice of Filing" a document in support thereof (Docs. 145, 146), and Plaintiff's reply (Doc. 148).  As explained below, Plaintiff's motion shall be granted.

I.       FACTUAL BACKGROUND[1]

       Plaintiff Brice Building Company, Inc. (Brice) is an Alabama corporation and was the general contractor for a construction project known as the Preserve Place at Grayton Beach, Florida (Preserve Place).  On or about September 7, 2004, Brice entered into a subcontract with B & C Fire Safety, Inc. (B & C), whereby B & C was to install a sprinkler system at Preserve Place.  The subcontract contains a rider which, in pertinent part, required B & C to maintain insurance and name Brice on such insurance as an additional insured, for losses arising out of operations under the subcontract.  Defendant Clarendon America Insurance Company (Clarendon) provided that insurance (hereafter, "the policy").

---

[1] For a more detailed factual background, see this court's order dated October 6, 2008 (Doc. 113).

On December 16, 2004, while construction at Preserve Place was underway, a truck delivering supplies to the construction site at the behest of B & C was rear-ended by a vehicle driven by Joseph R. Eddy, who died in the accident. The following day Brice requested that Clarendon defend and indemnify it, as an additional insured under the policy, "for all claims arising from the traffic accident" (Doc. 75, Ex. E). On January 20, 2005, First Mercury Insurance Company, who was "handling" Brice's request on behalf of Clarendon, denied Brice's claim for coverage under the policy (*id.*, Ex. H). Brice made additional repeated requests for defense and indemnity, which were all denied by or on behalf of Clarendon.

Next, Jacqueline M. Parks, as personal representative of Mr. Eddy's estate, filed a wrongful death lawsuit in the Circuit Court in and for Walton County Florida (Parks v. Waters). Named as defendants in the Parks v. Waters complaint were: Ricky L. Waters (the driver of delivery truck), Guntersville (the owner of the delivery truck), Brice, and B & C. The case proceeded to trial, and on June 30, 2007, a jury found that each defendant was at fault, and apportioned fault as follows: Ricky L. Waters and Guntersville (20%), Brice (40%), B & C (20%), and Mr. Eddy (20%) (*see* Doc. 75, Ex. L).

II.  PROCEDURAL BACKGROUND OF THE INSTANT CASE

   A.  Complaint/Amended Complaint

On May 11, 2007, prior to the Parks v. Waters trial, Brice filed the instant lawsuit (*see* Doc. 1). On October 24, 2007, Brice filed an amended complaint (Doc. 37). In the amended complaint, in Count I, Brice seeks declaratory relief regarding its rights to defense and indemnity as an additional insured under the policy, and in Count II, Brice alleges breach of contract and seeks the same declaratory relief as in Count I, but additionally seeks a declaration that Clarendon breached its duty to defend and indemnify Brice (*id.*).

   B.  Real Party in Interest Litigation

On June 26, 2008, Clarendon filed a "Motion to Name Amerisure as a Real Party and to Join Amerisure" (Doc. 97). In pertinent part, Clarendon asserted in the joinder motion that: 1) Brice was insured by Amerisure regarding the Preserve Place construction project; 2) Amerisure fully reimbursed Brice for the amount of damages it was found liable for in Parks v. Waters; 3) Brice, therefore, has suffered no damage as a result of Parks v. Waters; 4) Amerisure is the real party in interest in the instant action, and Clarendon will be prejudiced if Amerisure is not joined; and 5)

Clarendon is subject to a substantial risk of incurring inconsistent obligations if Amerisure is not joined (*id.*). On July 30, 2008, Brice filed a response in opposition to Clarendon's motion (Doc. 106). In pertinent part, Brice asserted that the joinder motion was substantially untimely, noting, not only that the deadline for adding parties had long passed, but also that dispositive motions had already been filed — prior to Clarendon's filing of the joinder motion — and further, that Clarendon failed to raise the joinder issue in its motion for summary judgment (*see id.*; *see also* Doc. 75 (Brice's Motion for Partial Summary Judgment, filed March 17, 2008); Doc. 77 (Clarendon's Motion for Final Summary Judgment, filed March 17, 2008)). Brice further asserted that Amerisure was not a real party in interest because Brice had entered into a contract with Amerisure, and pursuant to that contract Brice is obligated to reimburse Amerisure for payments made by Amerisure (if Brice recovers from Clarendon the funds paid by Amerisure on Brice's behalf) (Doc. 106). Brice specifically stated that "CLARENDON will not face multiple lawsuits or inconsistent obligations because Amerisure's subrogation rights against CLARENDON can be no greater than BRICE'S rights against CLARENDON and any judgment in this case will determine Amerisure's rights against CLARENDON as to the issues litigated." (*id.* at 6). In denying Clarendon's motion to join Amerisure, the undersigned found that Clarendon's motion was indeed untimely, and the joinder defense was therefore waived (*see* Doc. 112).

        C.        Summary Judgment Motions

As previously noted, on March 17, 2008, Brice filed a Motion for Partial Summary Judgment, and Clarendon filed a Motion for Final Summary Judgment (Docs. 75, 77).[2] Responses in opposition to the summary judgment motions were filed by the parties on May 29, 2008 (Docs. 91, 93). Important to the issues now before the court, Clarendon did not raise the real party in interest issue in its motion for final summary judgment or in its opposition to Plaintiff's motion for partial summary judgment (*see* Docs. 77, 93). Rather, the pleadings reflected that the issues in dispute between Brice and Clarendon concerned the interpretation of certain insurance policy provisions. Indeed, the court noted:

---

[2] Brice's motion for summary judgment was "partial" because Brice sought summary judgment only as to Count One (*see* Doc. 75).

> The [] motions for partial and final summary judgment essentially call upon the undersigned to interpret the policy (and endorsements or exclusions thereto) to determine the parties' rights and obligations. In brief, Brice contends it is indeed an additional insured under the policy and is therefore entitled to defense and indemnity with respect to the [Parks v. Waters] lawsuit, while Clarendon asserts that Mr. Eddy's traffic accident did not arise "solely" out of B & C's work [as required by a provision of the policy], or alternatively, that Guntersville was an "independent contractor," and therefore, the independent contractor exclusion is applicable.

(Doc. 113 at 6).

In an order dated October 6, 2008, Brice's motion for partial summary judgment was granted, and Clarendon's motion for final summary judgment was denied (Doc. 113). In short, the court "declared" that Brice is an additional insured under the policy of insurance issued by Clarendon, and that Brice is owed indemnity and defense costs from Clarendon under the terms and conditions of the policy (*id.* at 15).[3]

D.      Clarendon's Motion for Reconsideration

On October 16, 2008, Clarendon filed a Motion for Reconsideration of the order granting partial summary judgment in favor of Brice, in which Clarendon asserted six grounds for relief (*see* Doc. 116). Again, Clarendon failed to raise the real party in interest issue, and in the order denying Clarendon's motion for reconsideration, the court found that only four of Clarendon's grounds for relief were worthy of discussion (*see* Doc. 127). In discussing one of these four grounds, a ground raised by Clarendon for the first time in the motion for reconsideration, the court noted:

> It is improper for Defendant to now use a motion for reconsideration "'to raise arguments which could, and should, have been made'" before the court issued its ruling on the summary judgment motions. *See* Lussier v. Dugger, 904 F.2d 661, 667 (11th Cir. 1990) (citing Federal Deposit Ins. Corp. v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986)). As noted by the Eleventh Circuit, "A district court's denial of reconsideration is especially soundly exercised when the party has failed to articulate any reason for the failure to raise an issue at an earlier stage in the litigation." Lussier, 904 at 667 (citing Van Ryn v. Korean Air Lines, 640 F. Supp. 284, 286

---

[3] Because Brice sought and was granted only partial summary judgment, the undersigned directed the parties to advise the court of "which issues, if any, remain in dispute in light of the undersigned's findings in [the] order [granting partial summary judgment]" (*id.*). An end result of the court's directive was that Brice later voluntarily dismissed Count Two with prejudice (*see* Docs. 139, 140). Moreover (as will be discussed more fully *infra*), because the court had granted summary judgment as to Count One, the court advised the parties, during one or more telephonic conferences, that pursuant to 28 U.S.C. § 2202, the remaining matters to be resolved in this case concern the grant of "necessary or proper relief [to Brice] based on [the] declaratory judgment."

(C.D. Ca. 1985)). Here, Defendant has offered no reason for raising this argument for the first time in its motion for reconsideration. *See* American Home Assur. Co. v. Glenn Estess & Associates, 763 F.2d 1237, 1239 (11th Cir. 1985) ("the district court was well within its discretion in denying plaintiff's motion where plaintiff raised the [] issue for the first time after the entry of summary judgment"). Thus, Defendant's failure to timely raise this argument, in and of itself, provides a sufficient basis for denying Defendant relief on this ground. Notwithstanding, [the court will address the merits of Defendant's contention.]

(Doc. 127 at 3).[4]

      E.      Recent Developments and Current Status of Case

Because Brice moved to voluntarily dismiss Count Two with prejudice, and the Court granted Brice's motion (Docs. 139, 140), the only remaining count is Count One. And, as previously explained, the court has already granted summary judgment as to Count One. Thus, having granted summary judgment on the declaratory judgment count, the court advised the parties of its intention to award appropriate relief to Brice. *See* 28 U.S.C. § 2202 ("Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."); *see also* Texasteel Mfg. Co. v. Seaboard Sur. Co., 158 F.2d 90 (5th Cir. 1947) ("the granting of a money judgment in the case after the rendition of a declaratory decree was not error");[5] Security Insurance Company of New Haven v. White, 236 F.2d 215, 220 (10th Cir. 1956) ("further relief" under The Delcaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, may include an award for damages). Specifically, during a telephonic conference with counsel for Brice and Clarendon, held January 8, 2009, the court advised the parties that a hearing would be scheduled for the purpose of determining proper relief,[6] including an award to Brice of costs and attorneys' fees incurred in defending Parks v. Waters, indemnity, and issues related to prejudgement interest.[7] To that end, a hearing was

---

[4] This quote is included in the instant order because, as will be discussed *infra*, Clarendon continues to raise new issues.

[5] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

[6] Although the motion to dismiss Count Two was filed after the telephonic conference (*see* Doc. 139), Brice announced its intention to dismiss Count Two at the beginning of the telephonic conference. Thus, during the conference the court discussed with the parties the matter of relief as to Count One.

[7] The court clarified its view that attorneys fees and costs (and related matters) associated with the instant litigation were a separate matter and would be resolved following the entry of final judgment in this action. *See* Fed. R. Civ. P. 54(d);

scheduled for January 29, 2009 (*see* Doc. 138), which provided Clarendon with reasonable notice and an opportunity to be heard on issues relating to the award of proper relief to Brice.

However, the parties contacted the office of the undersigned on or about January 27, 2009, requesting that another telephonic conference be held prior to the above-described hearing. Thus, at the parties' request, a third telephonic conference was held on January 28, 2009, again with counsel for both parties in attendance.[8] During the conference the parties advised the court that they had reached certain stipulations (e.g., the maximum amount of indemnity that could be awarded to Brice and the total amount of the defense costs in Parks v. Waters (and the reasonableness of those costs)), and the parties requested that the court cancel the hearing scheduled for January 29. In lieu of a live hearing, the parties requested that they be permitted to submit briefs regarding the amounts that should be awarded to Brice. Thus, albeit reluctantly, the undersigned cancelled the hearing and set a timetable for the filing of briefs, directing Brice to file the first brief, to which Clarendon would file a response, and Brice would then be permitted to file a reply (*see* Docket Entry 141). The parties were specifically directed to address in their briefs the issue of what relief should be granted to Brice, <u>in light of the court's previous declaratory judgment in favor of Brice</u>.[9]

F.     Current Issues Before the Court

On February 3, 2009, Brice filed a Motion for Declaratory Judgment and Memorandum of Law in Support of Final Judgment (Doc. 142); on February 17, 2009, Clarendon filed response in opposition thereto and "Notice of Filing" a document in support thereof (Docs. 145, 146); and on March 4, 2009, Brice filed a reply (Doc. 148).

      i.     Brice's Motion for Declaratory Judgment[10]

---

N.D. Fla. Loc. R. 54.1.

[8] A court reporter was present for the first and second telephonic conferences, but not the third, as neither party asked (or desired) that the third conference be recorded.

[9] In other words, although Clarendon maintained its position that this court's findings in the order granting partial summary judgment to Brice were erroneous, Clarendon was nevertheless directed to address in its response the amounts claimed by Brice for defense costs, attorneys' fees, indemnity, and prejudgment interest (*see* Docket Entry 141).

[10] It should be noted that while styled as a "Motion for Declaratory Judgment and Memorandum of Law in Support of Final Judgment," this filing fully conforms with the court's expectations, as discussed with the parties during the conference held on January 28, 2009 (that is, it addresses the issue of what further relief should be granted to Brice in light of the previous declaratory judgment).

Case No. 3:07cv196/EMT

In pertinent part, Brice's motion first outlines the stipulations reached between the parties (that were discussed during the January 28 telephonic conference), as follows:

> BRICE and CLARENDON have stipulated that the below amounts are the most the Court can award to BRICE under the declaratory judgment action.
>
> | | |
> |---|---|
> | $543,187.12 | Remainder under the indemnity limits of the Clarendon policy |
> | $149,826.44 | Cost of defense for underlying state case |
> | $ 14,891.51 | Taxable costs |
> | $ 542.88 | Interest paid on underlying judgment. |
> | $ 68,344.24 | Prejudgment interest for indemnity, 119.07 per diem[11] |
> | $ 1,873.56 | Prejudgment interest on taxable costs, $3.26 per diem |
> | $ 25,339.82 | Prejudgment interest for cost of defense, $32.84 per diem[12] |
> | **$804,073.97** | **Total the Court should award BRICE in its Final Judgment**. |
>
> (plus $155.17 per diem interest January 30, 2009 forward).

(Doc. 142 at 3) (footnotes added).

Brice then asserts that the proper award should be an award in the total amount of $804,073.97, plus interest at $155.17 per day from January 30, 2009 forward (Doc. 142 at 7). Further, Brice explains the basis for each figure and each category of figures that underlie the total award sought (i.e., indemnity, in the amount as listed *supra*; costs of defense (in the memorandum, Brice seeks $149,822.19 (*see* Doc. 142 at 5), instead of $149,826.44, as listed *supra*, a difference of $4.25); taxable costs, as listed *supra*; interest paid on underlying judgment, as listed *supra*; and prejudgment interest on the indemnity, taxable costs, and cost of defense amounts (in the memorandum, Brice seeks interest on the taxable costs and costs of defense, as listed *supra*, but interest on the indemnity amount at a rate of $119.02 per day (*see* Doc. 142 at 6), instead of at $119.07 per day, as listed *supra*)) (*see* Doc. 142 at 3–7).

        ii.        Clarendon's Response to Brice's Motion for Declaratory Judgment & Brice's Reply thereto

In its response Clarendon does not address any of the specific <u>amounts</u> requested by Brice in any of the above categories, with the exception of noting the five-cent discrepancy in the rate of

---

[11] The prejudgment interest calculations for indemnity and taxable costs are based on the Court finding that the interest began accruing on July 5, 2007 (the date of the <u>Parks v. Waters</u> judgment) and calculated through January 29, 2009 (*see* Doc. 142 at 3).

[12] The prejudgment interest calculations for cost of defense are based on the Court finding that the interest began accruing on the date of each invoice and calculated through January 29, 2009 (*see* Doc. 142 at 3).

daily interest on the amount of indemnity (*see* Doc. 146 at 2 n.1). Rather, Clarendon takes the position that Brice is not entitled to any amount of money in any of the above categories, stating that "Clarendon owes Brice nothing." (Doc. 146 at 3). Clarendon then addresses each category of amounts claimed by Brice and organizes its response in five (5) separate parts as follows: I. Indemnity (with subparts (a) and (b));  II. Defense Costs (with subparts (a), (b), and (c));  III. Taxable Costs;  IV. Interest on Underlying Judgment;  and, V. Prejudgment Interest (with subparts (a) and (b)). For clarity, the court will address and label each category of amounts claimed by Brice in the same parts and subparts as Clarendon.

    I.       Indemnity

          (a)      Clarendon Owes Brice Nothing

In pertinent part, Clarendon first asserts that "Brice is not legally obligated to pay anything in this case, as the judgment in the underlying matter was fully satisfied by Amerisure" (*id.* at 146). Clarendon previously raised this issue in its Motion to Name Amerisure as a Real Party and to Join Amerisure, and as previously discussed, the court denied that motion, finding that the motion was untimely, and the real party in interest defense was therefore waived (*see* Doc. 112). Thus, to the extent this is an argument that Clarendon owes nothing to Brice because Amerisure is the real party in interest, the argument is waived.

The court notes, however, that regardless of who the real party in interest is, the court need only look at the terms of the policy to determine that Clarendon had a duty to indemnify Brice. The relevant policy provision with regard to indemnity provides that "[Clarendon] will pay those sums that the insured becomes legally obligated to pay" (*see* Doc. 146 at 3; Doc. 148 at 1); the policy says nothing about the insured actually paying any sums. By virtue of the jury's verdict and resulting judgment in <u>Parks v. Waters</u>, Brice (Clarendon's insured), became legally obligated to pay certain sums to Jacqueline M. Parks. Thus, it matters not whether Brice actually paid the judgment; rather, Clarendon's duty to indemnify Brice was triggered when Brice "became legally obligated to pay" Ms. Parks.

Clarendon further, and even less persuasively, next argues that "after the facts were adduced at trial, Clarendon was never requested to indemnify Brice" (Doc. 146 at 3). However, this argument ignores the fact that Brice had previously tendered the <u>Parks v. Waters</u> lawsuit to Clarendon on numerous occasions, seeking defense and indemnity, and the tenders were rejected

by Clarendon on each occasion (*see, e.g.*, Doc. 75, Exs. E (tender), H (rejection)).  Brice was left with no option but to ask its own insurer, Amerisure, to provide indemnity, and Amerisure in turn paid this loss on behalf of Brice pending the outcome of the instant action (*see* Doc. 148 at 3). Clarendon's argument that this somehow relieves it of its obligations to Brice is without merit. Clarendon breached its duty to indemnify Brice, and Clarendon cannot now avoid paying what it should have paid long ago simply because Amerisure paid the judgment on Brice's behalf.

Moreover, Brice has consistently pointed out (e.g., in opposition to Clarendon's joinder motion and in the instant reply) that it is obligated, pursuant to its insurance policy with Amerisure, to reimburse Amerisure (for payments made by Amerisure on Brice's behalf) any monies that Brice may be awarded in this suit (*see, e.g.*, Doc. 106 at 4–7; Doc. 148 at 2).  Thus, Brice will not receive a windfall if awarded anything here, because whatever may be awarded will be paid over to Amerisure.  And, Brice has similarly noted that it brought the instant action pursuant to the Amerisure policy provision, which states that Brice will bring suit on Amerisure's behalf if requested to do so, which eliminates the risk that Clarendon will incur inconsistent obligations (*id.* at 1–2, 4–5).  Thus, Clarendon's argument is not only untimely, it is without merit.

    (b)  Only 50% Owed Based Upon Clarendon's Excess Policy Language.

Next, for the first time in this case, Clarendon now asserts that its policy contains a clause providing for "coverage on an excess basis if the loss arises out of the maintenance or use of 'autos'" (Doc. 146 at 4). Clarendon then states, "[T]he stipulated facts bring this matter within the excess language of the insurance policy, since the loss arose out of a fatal automobile accident. Therefore, to the extent that another insurance policy exists, Clarendon is not required to indemnify Brice until their underlying policy is exhausted." (*id.*).  Clarendon further notes that Brice has a separate insurance policy with Amerisure that contains a virtually identical excess coverage clause, and therefore, the clauses are mutually repugnant, the policies will respond to claims on a prorated basis, and Clarendon's liability is only 50% of the covered claims and covered costs (*id.* at 4–5). In response to this assertion Brice notes, that much like the facts in the case of General Sec. Indem. Co. of Arizona v. Great Northern Ins. Co., No. CV 06-0032-S-MHW, 2007 WL 845857, at *13 (D. Idaho, March 19, 2007), the underlying loss here "did not arise out of the maintenance or use of an automobile, except in the most broadest sense," and therefore the auto provision has no application. *See id.*  Moreover, Brice notes that the clause at issue is a clause excluding coverage, which must

Case No.  3:07cv196/EMT

be narrowly construed.  Allstate Ins. Co. v. McCranie, 716 F. Supp. 1440, 1447 (S.D. Fla. 1989). Furthermore, to the extent any ambiguity exists regarding the interpretation of the clause, Brice points out that it should be construed in favor of the insured.  *See, e.g.*, Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So. 2d 938, 942 (Fla. 1979).

Initially, the court notes that Clarendon's "policy defense" is untimely, having been raised by Clarendon for the first time at this late stage in the litigation, after declaratory relief has been granted to Brice.  Moreover, the court is not persuaded by the merits of Clarendon's argument that the accident in question arose out of the maintenance or use of an automobile.  Rather, the accident arose during the negligent offloading of supplies at the Preserve Place construction site.  *See* General Sec. Indem. Co. of Arizona, 2007 WL 845857, at *13 (installation of a brake controller in a vehicle was not the "use of an auto" where complaint alleged that loss occurred because either the brake controller was defectively manufactured or improperly installed and/or adjusted, or that there was a failure to warn of the dangers of the device or how to properly use it).[13]  Here, in addition to generally alleging that Brice negligently supervised or directed the offloading of construction materials, the Parks v. Waters complaint specifically alleges, *inter alia*, that Brice negligently failed to procure a flag man or other safety measures to warn approaching vehicles of the stopped delivery truck (*see* Doc. 75, Ex. D at 20–22, 27).  Like in General Sec. Indem. Co. of Arizona, the allegations in the Parks v. Waters complaint only in the broadest sense concern the maintenance or use of an automobile. 2007 WL 845857, at *13.  Therefore, the court finds that the excess insurance provision has no application in relation to the loss in question here.  Moreover, to the extent there is any ambiguity with regard to the provision, the ambiguity should be resolved in favor of Brice and against Clarendon, Tropical Park, Inc. v. United States Fidelity & Guaranty Co., 357 So. 2d 253 (Fla. 3d DCA 1978), and because the provision is a coverage limitation or exclusion, it must be narrowly construed.  Cochran v. State Farm Mutual Automobile Insurance, 298 So. 2d 173 (Fla. 4th DCA 1974). For all these reasons, Clarendon's argument fails.  Accordingly, Brice shall be awarded indemnity in the amount of **$543,187.12**, a figure that is not disputed by Clarendon.

    II.    Defense Costs

        (a)    Brice's Defense Costs Are Not Covered by the Policy

---

[13] *See* U.S. Ct. of App. 11th Cir. Rule 36–2 (providing that an unpublished opinion may be cited as persuasive authority).

Case No.  3:07cv196/EMT

Clarendon asserts that Brice's defense costs are not covered by the policy, relying on the "Supplementary Payments" ("SP") provision of the Clarendon policy (*see* Doc. 146 at 5). Clarendon notes that the SP provision provides coverage for "seven specifically enumerated items that are in addition to the limits of insurance . . . [, n]one of these cover Brice's defense costs in this case," and only two of the seven provisions are "potentially implicated," including coverage for "expenses we [Clarendon] incur," and "[a]ll reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or 'suit'" (*id.* at 5–6). Clarendon then asserts that because Clarendon did not incur the defense costs, and because Clarendon did not request that Brice incur the defense costs in order to assist Clarendon in defending the case, Clarendon does not owe the costs claimed by Brice.

Clarendon cites three cases in support of its argument, but for the reasons stated by Brice in its reply (which need not be repeated here) all are inapposite (*see* Doc. 148 at 8–9).[14] The facts of the instant case reveal, as has been determined by the court, that Clarendon unjustifiably and wrongly refused to defend its insured (Brice) in Parks v. Waters, and Brice was therefore forced to seek defense elsewhere. The fact that Brice sought and obtained defense elsewhere does not relieve Clarendon of liability for the defense costs incurred in the defense of Brice. *See* Florida Ins. Guaranty Ass'n, 864 So. 2d at 1129 (it is well-established law that when an insurer's refusal to defend is unjustified, the insurer is liable for attorney's fees and other costs incurred in defending the underlying action) (citing Thomas v. W. World Ins. Co., 343 So. 2d 1298, 1303 n.3 (Fla. 2d DCA 1977) (same); Preuss v. United States Fire Ins. Co., 414 So. 2d 249, 250 (Fla. 4th DCA 1982) ("Attorneys fees constitute an element of damage recoverable by an indemnitee when his insurance company wrongfully fails to defend."); Cont'l Cas. Co. v. City of S. Daytona, 807 So. 2d 91, 93

---

[14] The three cases cited by Clarendon are Steele v. Kinsey, 801 So. 2d 297 (Fla. 2d DCA 2001) (attorney fees and costs awarded under the offer of judgment statute in suit between victim and the insured were not incurred at the insurer's request and were not covered by the SP provision under the liability coverage); Eller Media Company v. Nat'l Union Fire Co. of Pittsburgh, PA, 2008 WL 4224292 (S.D. Fla. Sept. 11, 2008) (insurer is not obligated to pay for an insured's criminal work product even when used in a civil action); and Florida Insurance Guaranty Association, Inc. v. All The Way With Bill Vernay, 864 So. 2d 1126, 1130 (Fla. 2d DCA 2003) (an insured can not hold the Florida Insurance Guaranty Association, Inc. ("FIGA") responsible for a monetary judgment for breach of contract that should have been entered against the insolvent insurer and the insured's only recourse for collecting on that judgment was against the insolvent insurer in bankruptcy court — this limited ruling was based on the fact that FIGA is a creature of statute and FIGA is not responsible for claims against an insurer that do not fall within FIGA's statutory obligations.).

(Fla. 5th DCA 2002) (failure to defend insured entitled the insured to recover reasonable attorney's fees incurred in the defense of the claim); MCO Envtl., Inc. v. Agric. Excess & Surplus Ins. Co., 689 So. 2d 1114, 1116 (Fla. 3d DCA 1997) (if an insurance company breaches its contractual duty to defend, the insured is entitled to the damages that flow from that breach, including attorney's fees and costs incurred in defending the underlying action); Seitlin & Co. v. Phoenix Ins. Co., 650 So. 2d 624, 626 (Fla. 3d DCA 1994) (same)).

        (b)      Brice Did Not Incur Any Expenses

To the extent this is reassertion by Clarendon of the "real party in interest" defense, the defense is waived. Moreover, this court previously found in its order granting partial summary judgment in favor of Brice, that Clarendon had a duty to defend Brice in the Parks v. Waters lawsuit, Clarendon wrongfully refused to defend Brice, and Clarendon therefore owes Brice the costs of the defense (*see* Doc. 113). It matters not that Amerisure paid the defense costs on behalf of Brice, because as already noted, Brice is contractually obligated to reimburse Amerisure for those expenses if Brice recovers them here.

        (c)      Only 50% of Defense Costs Would Be Owed Based upon Clarendon's Excess Policy Language

This argument by Clarendon is nothing more than a rehashing of its previous argument in section I.(b), *supra*, that Clarendon's policy is only excess to the Amerisure policy based on Clarendon's position that the loss arose out of the use of an automobile. For the reasons previously given in addressing Clarendon's argument in connection with I.(b), this argument has no merit.

Thus, costs of defense shall be awarded to Brice, and the remaining issue with regard to those costs is the amount to be awarded. Brice has indicated in its motion that "Brice and Clarendon have stipulated that the following defense costs were incurred in defending Brice in the underlying state action, and that the hours and rates are reasonable: $94,098.00 Attorneys Fees; $29,723.50 Paralegal Fees; and $26,000.69 Costs," which total $149,822.19 (Doc. 142 at 4–5). Moreover, in its response to Brice's motion, Clarendon does not dispute that defense costs were actually incurred in defending Brice, it does not dispute the amounts claimed by Brice, and it does not dispute that there was a stipulation with regard to those amounts[15] — Clarendon disputes only Brice's

---

[15] The court also notes that the parties announced during the third telephonic conference with the undersigned that an agreement had been reached with regard to the amount of defense costs.

entitlement to an award of defense costs (as discussed *supra*).  Thus, the amount of the award to Brice will be based on the parties' stipulation.  As previously noted, however, in Brice's motion two different amounts are listed for defense costs, $149,822.19 and $149,826.44 (*see* Doc. 142 at 3, 5).  The court will award the lower amount, as it is compatible with the total amount of attorneys' fees, paralegal fees, and costs, and the figure that is greater by only $4.25 appears to be a scrivener's error.  Accordingly, Brice shall be awarded defense costs in the amount of **$149,822.19**.

        III.      Taxable Costs

Brice seeks $14,891.51 in taxable costs (Doc. 142 at 5).  In response, Clarendon claims that Brice has "proffered an amount that they viewed as 'taxable,'" but Clarendon claims that "there is no evidence that costs were actually taxed to Brice" in the underlying litigation (Doc. 146 at 8).  Clarendon's argument is unclear.  To the extent this is a rehashing of any previous argument asserted by Clarendon (e.g., Amerisure or some other entity incurred these costs, but not Brice), the argument fails for reasons previously explained.

To the extent the argument is construed as one asserting that taxable costs should not be awarded because Brice failed to present evidence of these costs, which is how Brice has construed the argument (*see* Doc. 148 at 11), the argument is disingenuous.  Brice has referred the court to an email exchange between counsel for Brice and Clarendon, wherein counsel for Brice states:  "The following is the breakdown of payments made to Ms. Parks to satisfy the judgment against Brice . . . 4) $14,891.51 – 1/3 Share of taxable costs." (Doc. 148 at 11 & Ex. D).  Counsel for Clarendon replied: "I agree with these numbers." (Doc. 148, Ex. D).  Any assertion by Clarendon that an amount of taxable costs was proffered by Brice but not proven — in the face of this email exchange — is completely unpersuasive.  Moreover, at the parties' request, the court cancelled a hearing during which issues such as this were to be addressed, and the court did so based upon the parties' assurances that a stipulation had been reached regarding issues such as the amount of costs in <u>Parks v. Waters</u>.  Accordingly, Brice shall be awarded taxable costs in the amount of **$14,891.51**.

        IV.      Interest Paid on Underlying Judgment

In its motion Brice claims that $542.88 was paid to Mrs. Parks as interest owed from the date of the judgment of the Walton County Circuit Court until the date the judgment was paid (Doc. 142 at 5).  In opposing payment of this amount to Brice, Clarendon states that it "adopts and reiterates its prior memorandum with respect to 1) the interest being outside the coverage of the insurance

policy as Clarendon did not pay any judgment; [and] 2) that interest [was] paid by Amerisure and not Brice . . . ." (Doc. 146 at 9). Clarendon additionally raises the same argument regarding Clarendon's "responsibility only to pay pro-rated amounts in accordance with the terms of the applicable Other Insurance clauses" (*id.*). In reply, Brice notes that the parties had stipulated to the amount of interest paid on the underlying judgment in the same email exchange previously discussed (Doc. 148 at 11 & Ex. D).

While it is unclear exactly what is meant when Clarendon points out that "the interest being outside the coverage of the insurance policy as Clarendon did not pay any judgment," it appears that Clarendon is merely restating arguments that have previously been rejected, *supra*. What is clear is that the parties stipulated that $542.88 was paid to Ms. Parks in interest, regardless of who paid it, that any further rehashing of the previous arguments carries no weight, and that Brice is entitled to this amount. Accordingly, Brice shall be awarded interest paid on the underlying judgment in the amount of **$542.88**.

     V.     Prejudgment Interest[16]

Brice claims interest is owed by Clarendon on <u>indemnity</u> and <u>taxable costs</u>, from July 5, 2007, the date of the judgment of the Walton County Circuit Court and the date the indemnity and taxable costs became due (Doc. 142 at 5–6). Further, Brice states that as of January 29, 2009, the interest due on the $543,187.12 indemnity was $68,344.24 and increasing at a rate of $119.02[17] a day from January 30, 2009, forward, and the interest due on the $14,891.51 in taxable costs was $1,873.56[18] and increasing at a rate of $3.26 a day from January 30, 2009, forward (*id.* at 6). Next, Brice asserts that it is entitled to prejudgment interest on the <u>defense costs</u> beginning from the time the proceeds became due under the Clarendon policy, and that the parties "have stipulated that the total prejudgment interest [on defense costs] through January 29, 2009, was $25,339.82, and is increasing at the rate of $32.84 per day from January 30, 2009, forward (*id.* at 7).

---

[16] Although each party broke down this category into subparts, the subparts are different. Therefore, the court will address Prejudgment Interest as one category.

[17] As noted previously, Brice's motion contains a discrepancy with regard to this amount, but the higher amount (i.e., $119.07) appears to be a scrivener's error. The court, therefore, will use the lower amount ($119.02).

[18] Again, Brice's motion contains a discrepancy, as it lists $1,873.56 in one section of the motion (*see* Doc. 142 at 3) and $1,873.66 in another section (*see id.* at 6). The court will use the lower amount.

In opposition, Clarendon first, again, appears to basically restate its earlier arguments that because Brice paid no portion of the underlying judgment or costs, it had no "out-of-pocket" loss, and therefore is entitled to no prejudgment interest payments from Clarendon (*see* Doc. 146 at 10–11). Again, the court finds that this argument is either waived as untimely, or without merit for reasons previously stated. Further, the court notes that in Lumbermens Mut. Cas. Co. v. Percefull, 653 So. 2d 389 (Fla. 1995), the Florida Supreme Court addressed the argument that Clarendon appears to be making here; that is, that Brice did not pay the indemnity or costs and should not receive a "windfall" in the form of prejudgment interest. In rejecting this contention, the court held that an insured person is entitled to prejudgment interest on amounts due under a contract of insurance even where the insured did not pay the expenses related to the insurance claim. *Id.* at 390. Moreover, the court observed the "general rule that prejudgment interest is allowed for actions based on contract from the date the debt is due." *Id.* (citing Parker v. Brinson Construction Co., 78 So. 2d 873, 874 (Fla. 1955)). And, like the instant case, the "action based on contract" in Lumbermens was an action filed by an insured for breach of contract, specific performance, and a declaratory judgment regarding the scope of coverage under the policy. Lumbermens, 653 So. 2d 389. Thus, Brice is entitled to prejudgment interest on indemnity and costs.

One final contention must be addressed, however. Clarendon asserts that if the court determines that prejudgment interest is owed, the interest may run only from the date this court determined it was owed. In support, Clarendon characterizes the instant litigation as an "equitable claim[] for declaratory relief" and asserts, therefore, that the interest is not owed until the declaration is entered (Doc. 146 at 11 (citing Paoli v. Naterhson, 732 So. 2d 486, 488 (Fla. 2d DCA 1999)). However, as Clarendon is fully aware, while declaratory relief was indeed awarded in this case, it was based upon an interpretation of the parties' rights and obligations contained in an insurance contract. This is not a case in equity; it is an action based in contract. *See* Lumbermens, 653 So. 2d 389. Therefore, Clarendon's argument that prejudgment interest begins to run from the date of the declaratory judgment of this court is incorrect, and interest on indemnity and defense costs will be calculated from the date they became due, that is, the date of the underlying judgment in the Walton County Circuit Court.[19]

---

[19] As previously noted, Brice has calculated the interest from the date of the judgment through January 29, 2009, and Clarendon does not dispute these calculations. Clarendon disputes only Brice's entitlement to these amounts.

Case No. 3:07cv196/EMT

Accordingly, Brice shall be awarded Prejudgment Interest as follows: 1) <u>Interest on Indemnity</u> — **$68,344.24** as of January 29, 2009, increasing at a rate of **$119.02** per day from January 30, 2009, forward;  2) <u>Interest on Taxable Costs</u> — **$1,873.56** as of January 29, 2009, increasing at a rate of **$3.26** per day from January 30, 2009, forward; and 3) <u>Interest on Defense Costs</u> — **$25,339.82** as of January 29, 2009, increasing at a rate of **$32.84** per day from January 30, 2009, forward.

It is therefore **ORDERED** that:

1. Plaintiff Brice's Motion for Declaratory Judgment and Memorandum of Law in Support of Final Judgment (Doc. 142) is **GRANTED** as outlined in the body of this order.

2. The clerk is directed to enter Final Judgment in favor of Brice, reflecting that Brice recover from Clarendon the following sums:

(a) **INDEMNITY** in the amount of **$543,187.12**, and **INTEREST** on the indemnity in the amount of **$68,344.24** as of January 29, 2009, and increasing at a rate of **$119.02** per day from January 30, 2009, forward;

(b) **DEFENSE COSTS** in the amount of **$149,822.19**, and **INTEREST** on the defense costs in the amount of **$25,339.82** as of January 29, 2009, and increasing at a rate of **$32.84** per day from January 30, 2009, forward;

(c) **TAXABLE COSTS** in the amount of **$14,891.51**, and **INTEREST** on the taxable costs in the amount of **$1,873.56** as of January 29, 2009, and increasing at a rate of **$3.26** per day from January 30, 2009, forward; and

(d) **INTEREST PAID ON THE UNDERLYING JUDGMENT** in the amount of **$542.88**.

At Pensacola, Florida, this <u>8th</u> day of April 2009.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**